UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RAY ANTHONY ROLLINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 14-0128-CV-W-NKL-P |
| ) | |
| TOM VILLMER, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Ray Anthony Rollins, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on January 28, 2014. Petitioner does not challenge any state conviction or sentence. Rather, petitioner challenges the denial of a parole hearing by the Missouri Board of Probation and Parole ("MBPP") and the Missouri Department of Corrections ("DOC"). Prior to filing this federal petition, petitioner filed a declaratory judgment action in the Circuit Court of Cole County, Missouri and the judge granted summary judgment in favor of the DOC. Petitioner appealed the circuit court's decision, and the Missouri Court of Appeals affirmed.

The petition raises three Grounds for relief: (1) that the DOC and the MBPP denied petitioner due process when he was not granted a parole hearing on a specific date; (2) that the trial court denied petitioner due process by granting summary judgment in favor of the DOC and denying his declaratory judgment actions; and (3) that the DOC denied petitioner access to the courts by operation of its "QLC" (qualified legal claim) policy, which he contends denied him the right to legal counsel and access to the courts.

Respondent contends that none of petitioner's Grounds are cognizable on federal habeas review.

# STATEMENT OF FACTS

The Missouri Court of Appeals summarized the facts as follows:

> [Petitioner] pleaded guilty to burglary in the first degree, rape and two counts of ACA. The Circuit Court of St. Louis County sentenced [petitioner] to a term of fifteen years on the burglary count to be served concurrently with two concurrent terms of twenty-four years on the ACA counts, followed by a consecutive term of five years on the rape count. The burglary and ACA counts were calculated to start on October 15, 1991. The rape count was calculated to start on October 14, 2010, which was the conditional release date for the ACA counts under section 558.011.4(1)(c) (the last five years of a sentence of more than fifteen years is the conditional release term).
>
> The DOC's Board of Probation and Parole ("Parole Board") held a parole hearing on October 30, 1998, but declined to parole [petitioner] based on the circumstances of his offenses--raping a teenage girl by the use of threat and forcible compulsion—and on his failure to substantially observe prison rules, as evidenced by his accumulation of conduct violations, including threatening a correctional officer. The Parole Board concluded that release at that time would depreciate the seriousness of [petitioner's] criminal behavior and promote disrespect for the law. The Parole Board held another hearing in October 2003 but declined to grant [petitioner] parole because the Parole Board concluded it would depreciate the seriousness of the offenses.
>
> In 2006 and 2007, DOC records custodian officers responded in writing to inquiries by [petitioner] regarding his release. In a 2006 memorandum, the records officers advised [petitioner] that on the twenty-four-year concurrent sentences for ACA, he was required to serve nineteen years before obtaining his conditional release date of October 14, 2010, when he would then begin serving his five-year sentence for rape. He was advised that on the five-year sentence for rape he must serve three years and four months before being eligible for conditional release, which would calculate to a date of February 14, 2014. He was also advised that he was *not* serving a term of eighty-five percent on any of the offenses for which he was sentenced. In a 2007 memorandum, the records officer confirmed that the DOC had *not* applied statutory minimum terms based on section 558.019 and that [petitioner] must serve three years on the ACA sentences prior to being eligible for parole. The records officer stressed that parole dates are at the discretion of the Parole Board.
>
> Another parole hearing was held in October 2008, but the Parole

> Board declined to grant [petitioner] parole because the Parole Board concluded it would depreciate the seriousness of the offenses and because there did not appear to be a reasonable probability that [petitioner] would live and remain at liberty without again violating the law based on his poor institutional adjustment.
>
> In January 2009, the Circuit Court of St. Louis County denied [petitioner's] previously filed motion requesting that the court correct the DOC's alleged error in applying the definition of a "dangerous felony" found in section 556.061 and the "minimum prison term" provisions of section 558.019 to [petitioner's] sentences. The court found that "[n]othing contained in [petitioner's] pleading causes the Court to find that relief sought is either necessary or appropriate."
>
> On November 12, 2010, the Parole Board again considered [petitioner] for parole and again declined to release him because the Parole Board again concluded it would depreciate the seriousness of the offenses. However, the Parole Board did schedule [petitioner[ for release from confinement on February 13, 2014, conditioned upon his obtaining a GED, having no contact with the victim, not drinking, and attending substance abuse and sex offended programs.
>
> On November 29, 2010, [petitioner] filed a Petition for Declaratory Judgment with the trial court alleging that the DOC erroneously treated his ACA conviction as a dangerous felony under the statutory minimum prison term provisions of sections 556.061(8) and 558.019, making him ineligible for parole on his ACA sentences for nineteen years rather than the three years provided in section 571.015. He requested declarations that (i) the DOC erroneously applied the mandatory minimum prison term to his ACA sentence, and (ii) his sentence for ACA is a term of three years and not nineteen years.
>
> The DOC filed a motion for summary judgment, arguing that [petitioner's] face sheet demonstrated that he was being counted as having a three-year mandatory-minimum prison term on his armed criminal action sentences and was not being treated as statutorily ineligible for parole as evidenced by the fact that he received parole hearings in 1998, 2003, 2008, and 2010. The trial court issued its judgment on March 1, 2011, finding that [petitioner's] claim was refuted by the record and granting the DOC's summary judgment motion.

(Doc. No. 20, Respondent's Exhibit F, pp. 2-4) (internal footnotes omitted) (emphasis in original).

Before the state court findings may be set aside, a federal court must conclude that the

state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUNDS 1 & 2

In Ground 1, petitioner claims that he has a liberty interest in the DOC granting him a parole hearing on a date certain. In Ground 2, petitioner claims that his right to due process was violated by the denial of a parole hearing and by the state trial court when summary judgment was granted in favor of the DOC and petitioner's declaratory judgment action was denied.

As a preliminary matter, petitioner's Ground 1 is moot. Petitioner claims that he should have received a parole hearing in 1996 and this court has no available means to correct that almost twenty years after-the-fact. Additionally, the record, as provided by petitioner, indicates that the DOC did grant petitioner parole hearings a number of times between 1998 and 2010. Any harm suffered by petitioner was remedied when he was granted a parole hearing in 1998. Further, to the extent that petitioner's claim is not moot, petitioner has no liberty interest in the DOC granting him a parole hearing on a date certain. Green v. Black, 755 F.2d 687, 688 (8th Cir. 1985).

As it concerns Grounds 1 and 2, the Missouri Court of Appeals held that petitioner's

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

claim in his declaratory judgment action was refuted by the record and that the trial court appropriately granted summary judgment in favor of the DOC. In disposing of these grounds, the state appellate court held as follows:

> . . . [Petitioner] confuses his *parole eligibility* date, based on his minimum prison term with his *conditional release* date. [Petitioner] was sentenced to twenty-four years imprisonment on each of his ACA convictions, to be served concurrently; the sentences were calculated to start October, 15, 1991. He was required to serve a mandatory minimum of three years imprisonment before becoming eligible for parole. § 571.015.1. [Petitioner's] face sheet clearly indicates that [petitioner] was parole ineligible on the ACA charges for three years. [Petitioner], however, was granted parole hearings after serving his mandatory three-year minimum term. The record includes notices of parole denials from 1998, 2003, 2008, and 2010. The Parole Board exercised its discretion in denying [petitioner] parole after he became eligible. See State ex rel. Cavallaro v. Groose, 908 S.W.2d 133, 135 (Mo. Banc 1995) (stating the Parole Board has "almost unlimited discretion" in deciding whether to grant parole release).
>
> On the other hand, the Parole Board exercises limited discretion over [petitioner's] conditional release date, which is specifically dictated by statute. Under section 558.011.4(1)(c), [petitioner's] twenty-four-year sentence is divided into a nineteen-year prison term and a five-year conditional release term, although under subsection 5, the prison term may be extended up to a maximum of the entire sentence of imprisonment by the Parole Board. [Petitioner's] face sheet clearly indicates that he was *eligible* for conditional release on the ACA charges on October 14, 2010, which is nineteen years after his sentence state date on October 15, 1991. [Petitioner] was not, however, *entitled* to be conditionally released on that date: "The date of conditional release from the prison term may be extended up to a maximum of the entire sentence of imprisonment by the board of probation and parole . . . when an offender fails to follow the rules and regulations of the division or commits an act in violation of such rules." § 558.011.5. Ultimately, in the 2010 parole decision, the Parole Board scheduled [petitioner] for release on February 13, 2014, conditioned on specified conduct, which date is within the maximum five-year conditional release term prior to his maximum release date of October 14, 2015, when his sentence will be fulfilled.

(Doc. No. 20, Respondent's Exhibit F, pp. 7-8) (internal footnotes omitted) (emphasis in original).

The resolution of Grounds 1 and 2 by the state court did not result in "a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]

Additionally, respondent is correct in his assertion that Grounds 1 and 2 are not cognizable in a Section 2254 habeas corpus proceeding because they merely involve the interpretation and application of state law, which is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). Missouri parole statutes do not create a liberty interest in the parole board's discretionary decisions, and, in fact, the Missouri Board of Probation and Parole has "almost unlimited discretion" regarding parole decisions. See Adams v. Agniel, 405 F.3d 643, 645 (8th Cir. 2005) (per curiam); Ingrassia v. Purkett, 985 F. 2d 987, 988 (8th Cir. 1993).

Consequently, Grounds 1 and 2 will be denied.

## **GROUND 3**

In Ground 3, petitioner claims that the DOC denied him access to the courts by operation of its "QLC" (qualified legal claim) policy, which he contends denied him the right to legal counsel and access to the courts. Respondent contends that petitioner's claim is not cognizable on federal habeas review. (Doc. No. 20, p. 5)

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

Respondent is correct. Ground 3 is not cognizable on federal habeas review because it is not a challenge to the constitutionality of petitioner's convictions or sentences. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). Federal habeas review is only available where a state prisoner is seeking to challenge the lawfulness of his custody. Wilkinson v. Dotson, 544 U.S. 74, 80 (2005). Here, petitioner is simply complaining about a DOC policy which he feels has negatively impacted his ability to pursue his parole claims in state or federal court. Such a claim is completely extraneous to the legality of either his convictions or sentences. Consequently, Ground 3 will be denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice;

(3) the issuance of a certificate of appealability is denied; and

(4) petitioner's motion to expand the record (Doc. No. 16) is denied as moot.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
UNITED STATES DISTRICT JUDGE

Jefferson City, Missouri,

Dated: February 10, 2015.